UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DERON BARTON, et al., | ) |
| Plaintiffs, | ) |
| v. | ) 2:19-cv-00318-GZS |
| VILLAGE MORTGAGE COMPANY, et al., | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR ATTACHMENT
AND ATTACHMENT ON TRUSTEE PROCESS**

In this diversity action, Plaintiffs Deron Barton, Edmond Gosselin and Erin McNally seek to recover unpaid wages from their former employer, Defendant Village Mortgage Company. Plaintiffs assert claims pursuant to a Maine statute, 26 M.R.S. § 626.

The matter is before the Court on Plaintiffs' Motion for Approval of Attachment and Attachment on Trustee Process (ECF No. 18), through which motion Plaintiffs seek an attachment in the amount of $262,827.09. For the reasons set forth below, following a review of the record and after consideration of the parties' arguments, the Court grants in part Plaintiffs' motion.

**FACTUAL BACKGROUND**

Defendant Village Mortgage Company (Village) is a Connecticut business corporation that provides residential mortgage brokerage services in several states, including Maine. (Affidavit of Laurel Caliendo, ECF No. 23-1, ¶¶ 5-6.) Village

maintained a Portland, Maine, branch location from January 2018 until April 2019. (*Id*. ¶ 23.)

Plaintiff McNally was Branch Operations Manager at Village's Portland office from January 3, 2018 to April 15, 2019. (Affidavit of Erin McNally, ECF No. 18-2, ¶ 1.) Plaintiff Gosselin was employed by Village as a Loan Originator from November 5, 2018 until his resignation on April 15, 2019. (Affidavit of Edmond Gosselin, ECF No. 18-4, ¶ 1.) Plaintiff Barton was Branch Manager and Senior Loan Originator at the Portland location from January 3, 2018 until his resignation on April 15, 2019. (Affidavit of Deron Barton, ECF No. 18-7, ¶ 1.) Plaintiffs allege that they are owed commissions and/or bonuses according to the terms of their respective employment agreements with Village.

## DISCUSSION

### A. **Standard of Proof**

Pursuant to Federal Rule of Civil Procedure 64 and District of Maine Local Rule 64, the Court applies Maine law when presented with a motion for attachment and attachment on trustee process. To obtain an attachment or an attachment on trustee process, a plaintiff must demonstrate "that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." M.R. Civ. P. 4A(c), 4B(c). A motion for an attachment or an attachment on trustee process must be accompanied by an affidavit or affidavits setting forth "specific facts sufficient to warrant the required findings and shall be upon the

affiant's own knowledge, information or belief; and so far as upon information and belief, shall state that the affiant believes this information to be true." M. R. Civ. P. 4A(i), 4B(c).

### B. 26 M.R.S. § 626

The purpose of 26 M.R.S. § 626, which addresses compensation upon the end of employment, is to "provide a broad guarantee of prompt payment of wages to all employees on termination." *Burke v. Port Resort Realty Corp.*, 1999 ME 138, ¶ 9, 737 A.2d 1055, 1059. Section 626 provides in pertinent part:

> An employee leaving employment must be paid in full no later than the employee's next established payday. Any overcompensation may be withheld if authorized under section 635 ….[1]
>
> ***
>
> An employer found in violation of this section is liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employee or employees must include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

The Maine Law Court has determined that section 626 is unambiguous. *Bisbing v. Maine Med. Ctr.*, 2003 ME 49, ¶ 5, 820 A.2d 582, 584. "Section 626 requires an employer to pay at least the undisputed wages owed regardless of whether the parties dispute the exact amount of wages owed." *Burke*, 1999 ME 138 at ¶ 16, 737 A.2d at 1060. Unlike similar statutes in other jurisdictions, "section 626 does not have a 'bona fide dispute' exception." *Id.* Moreover, there is "no hint in the statute that treble damages and attorney

---

[1] Under section 635, "'[o]vercompensation' means any compensation paid to an employee that is greater than that to which the employee is entitled under the compensation system established by the employer, *but does not include* … awards, bonuses, commissions or draws or advances against compensation." 26 M.R.S. § 635(1)(B) (emphasis added).

3

fees can be awarded only on a showing that the employer has acted in bad faith." *Bisbing*, 2003 ME 49 at ¶ 5, 820 A.2d at 584.

To determine the amount, if any, that an employer owes, the Law Court explained:

> [a]lthough section 626 creates a statutory right for former employees to seek payment, entitlement to payment is governed solely by the terms of the employment agreement. *Rowell v. Jones & Vining, Inc.*, 524 A.2d 1208, 1210-11 (Me. 1987). Therefore, pursuant to section 626, a former employee may only claim what is owed according to the terms of the employment agreement; section 626 does not modify or supercede its terms.

*Richardson v. Winthrop School Dept.*, 2009 ME 109, ¶ 7, 983 A.2d 400, 402. "The employment agreement, not section 626, governs how wages are earned and, if specified, when wages are to be paid." *Burke v. Port Resort Realty Corp.*, 1998 ME 193, ¶ 5, 714 A.2d 837, 839 (citation omitted).

Bonus-based compensation is within section 626's protection of wages. *OfficeMax Inc. v. County Qwik Print, Inc.*, 802 F. Supp. 2d 271, 283-84 (D. Me. 2011) ("Maine's wages statute applies with equal force to incentive and bonus-based compensation as it does to 'wages.'"). "Once a nondiscretionary bonus is earned, it must be paid." *White v. Hewlett Packard Enter. Co.*, Civil No. 2:17-cv-491-DBH, 2019 WL 2438780, at *3 (D. Me. June 11, 2019), *appeal docketed*, No. 19-1696 (1st Cir. July 10, 2019).

### C. <u>Plaintiff Erin McNally</u>

Shortly before Plaintiff McNally began working at Village, she received a letter on Village letterhead, dated January 2, 2018 and signed by Senior VP & CFO Justin Girolimon, which stated:

> This letter outlines the important information about the employment opportunity we are extending to you…. you will receive a bonus of $295.00

> for each loan that you process upon the loan closing and funding….. All compensation will be paid according to the normal payroll practices of the company …. This letter constitutes the entire agreement by the Company and you with respect to the subject matter hereof, and supersedes any and all prior agreements or understandings between you and the Company with respect to the subject matter hereof, whether written or oral. The above terms are not contractual. They are a summary of our initial employment relationship and are subject to later modification by the Company.

(ECF No. 18-3.)

Even if the January 2, 2018 offer letter to Plaintiff McNally, as well as the similar offer letters to Plaintiffs Gosselin and Barton, are neither contracts nor employment agreements, that fact "is not fatal to a claim under section 626 since the [Maine] Supreme Judicial Court has previously affirmed payment under section 626 even where payment was not premised on either a contract or employment agreement." *OfficeMax, Inc. v. Sousa*, 773 F. Supp. 2d 190, 234 (D. Me. 2011), citing *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶¶ 2, 9, 770 A.2d 97, 100-101 (affirming grant of treble damages under section 626 for commissions that were promised in a memorandum from a company president).

Plaintiff McNally alleges that following her resignation on April 15, 2019, her next scheduled pay day was May 20, 2019. (ECF No. 18-2, ¶ 4.) At the time of her resignation, she had earned bonuses on six loans she had processed, which loans had closed and been funded, for a total due of $1,770 ($295 x 6). (*Id.*) She notes, however, that Village did not pay her the bonuses until July 5, 2019 (*id.*); Village does not dispute the timing of the payment. (Affidavit of Tracy Schweiger, ECF No. 23-2, ¶ 21.)

Village's payment of the $1,770 to Plaintiff McNally weeks after the "employee's next established pay day" violated the plain terms of section 626. Plaintiff McNally thus

has demonstrated that she is more likely than not to succeed on this claim against Village and, therefore, is entitled to an attachment and an attachment on trustee process of the sum she would recover pursuant to the liquidated damages provision of section 626—double the $1,770 already paid, or $3,540. *Cf. Gibson v. Power Maint. Int'l, Inc.*, No. 02-37-P-C, 2002 WL 31399791, at *5 (D. Me. Oct. 24, 2002) (in finding plaintiff's claim for past due wages moot, court noted with approval that the defendant had voluntarily paid triple the amount due to plaintiff "as required by 29 M.R.S.A. 626-A when a wage payment is late.").[2]

Plaintiff McNally also alleges that she "continued to provide loan processing services on 16 loans that had not yet closed…. The last loan originated for which [she] provided loan processing services closed on June 3, 2019."[3] (ECF No. 18-2, ¶ 5.) She did not receive bonus payments for the 16 loans, however. (ECF No. 18-2, ¶ 6.)

Village does not dispute that Plaintiff McNally was not paid bonuses on the loans that had not closed as of her resignation. Village contends she is not entitled to the claimed bonuses. Tracy Schweiger, Village VP of Human Resources, explains that "it has been the company's practice to pay loan originators commissions on loans that have been funded and closed, regardless of whether the loans are funded and closed before or after the loan

---

[2] The referenced provision of section 626-A applies to current employees, and its remedy language is similar to that of section 626. Section 626-A states that an employee can recover a judgment against an employer for unpaid wages and health benefits as well as "a reasonable rate of interest, costs of suit including a reasonable attorney's fee, and an additional amount equal to twice the amount of unpaid wages as liquidated damages."

[3] Village continued to process all loans originated at the Portland branch after Plaintiffs' resignation, but did not originate any new loans from the Portland branch after April 15, 2019. (Affidavit of Laurel Caliendo, ECF No. 23-1, ¶ 23.)

originator's termination of employment with the company," (ECF No. 23-2, ¶ 4); "it has been the company's practice," however, "to pay loan *processors* a bonus on loans funded and closed during their employment with Village. Loan processors are not paid a bonus on loans that close and are funded after the processor has terminated their employment with Village." (ECF No. 23-2, ¶ 5.) "Erin … received a bonus of $295 on all loans that she processed and which were both funded and closed prior to her resignation of April 15, 2019." (ECF No. 23-2, ¶ 19 ECF No. 23-1, ¶ 12.)

Village's offer letter to Plaintiff McNally states that she was to "receive a bonus of $295.00 for each loan that [she] process[ed] upon the loan closing and funding." The letter lacks any suggestion that Plaintiff's entitlement to bonuses was limited to loans which closed and were funded prior to the end of her employment. Village could have explicitly included limiting language in its offer letter, but did not. *See, e.g., Truelove v. Ne. Capital & Advisory, Inc.*, 738 N.E.2d 770, 773 (N.Y. 2000) (plaintiff not entitled to bonus payment explicitly predicated on continued employment); *Bader v. Wells Fargo Home Mort. Inc.*, 773 F. Supp. 2d 397, 408 (S.D.N.Y. 2011) (same). There is no ambiguity in this language and Village "could not—at least without some explicit reservations—make changes [to it] retroactively." *OfficeMax Inc.*, 773 F. Supp. 2d at 234. Plaintiff McNally has demonstrated that she is likely to recover a judgment on her claim of unpaid bonuses and, therefore, is entitled to a further attachment and attachment on trustee process in the amount of $14,160 ($295 x 16 = $4,720, tripled).[4]

---

[4] In support of her contention that she is entitled to the bonuses, Plaintiff McNally also argues that she continued to work on processing a number of loans for Village even after her resignation. (ECF No. 18-2,

### D. Plaintiff Edmond Gosselin

In its October 12, 2018 offer letter to Plaintiff Gosselin, Village states that it would pay him

> 100 basis points on any loan that you originate … upon funding of the loan in accordance with VMC's pay period…. Village is offering you a sign-on bonus totaling $108,000. The sign-on bonus will be paid over time as a bonus … in the first 12 months of employment…. If you leave Village Mortgage … within 12 months of your start date, you will be required to pay back all the monies paid to you from the bonus compensation. Repayment of the monies owed back to Village must be within 30 days of leave date.

(ECF No. 18-5.)

Plaintiff Gosselin claims that he is owed commissions he earned but did not receive for $5,071,344 in closed and funded loans he originated at Village. (ECF No. 18-4, ¶ 5.) Village concedes that between April 19, 2019 and June 3, 2019, Plaintiff Gosselin originated 9 loans with an aggregate value of $2,968,319.00, which closed and were funded, which loans would have generated $29,683.19 in commissions. (ECF No. 23-2, ¶ 26.) Village argues, however, that Plaintiff Gosselin was required to return $31,658.40, the net of $49,500 paid to him in signing bonus, and that he has not remitted any portion of this sign-on bonus to Village. (ECF No. 23-2, ¶ 25.) Village, therefore, withheld the $29,683.19 in commissions earned by Gosselin for loans that were funded and closed between April 19, 2019 and June 3, 2019. (ECF No. 23-2, ¶ 27.)

Section 626 provides:

---

¶ 5; ECF No. 24-3, ¶¶ 2-3; ECF Nos. 24-4 – 24-9.) Village counters that it did not ask her to process loans after her resignation, and if she continued to process loans or otherwise work on Village loans after her resignation, she did so without Village's authority and in violation of the company's policies. (ECF No. 23-2, ¶ 20; ECF No. 23-1, ¶ 14.)

> In any action for unpaid wages brought under this subchapter, the employer may not deduct as a setoff or counterclaim …any money allegedly owed to the employer by the employee, … provided that any overcompensation may be withheld if authorized under section 635 …. [N]othing in this section may be construed to limit or restrict in any way any rights that the employer has to recover, by a separate legal action, any money owed the employer by the employee.

Pursuant to section 635, "overcompensation" specifically does not include "awards, bonuses, commissions or draws or advances against compensation." 26 M.R.S. § 635(1)(B). While Village might have a claim against Plaintiff Gosselin for the return of his signing bonus, the record lacks any evidence or authority to suggest that Village was legally entitled to withhold the bonuses Plaintiff Gosselin earned under his employment agreement. In short, Plaintiff Gosselin has demonstrated that he is more likely than not to prevail on his claim against Village and is entitled to an attachment and an attachment on trustee process in the amount of $89,049.57 ($29,683.19 in commissions, multiplied by three).

### E. **Plaintiff Deron Barton**

In its December 27, 2017 offer letter to Plaintiff Barton, Village stated that he would be paid an override bonus of 30 basis points on all funded loans originated in the Portland branch, including his own production. (ECF No.18-8.) For loans he originated, he would receive an additional commission based on the volume of loans he originated each month as follows: 60 basis points for a total funded volume between $0-999,999; 80 basis points for a total funded volume of $1,000,000-2,999,999; and 100 basis points for a total funded

9

volume of $3,000,000 and over. (*Id*.) He was also offered a sign-on bonus of $30,000.[5] (ECF No.18-8.)

According to Laurel Caliendo, founder of Village and its President and CEO, Village and Plaintiff Barton negotiated a revised employment agreement in January 2019. (ECF No. 23-1, ¶ 20.) Under the terms of the new agreement, Plaintiff Barton would receive commissions equal to 95 basis points on all closed and funded loans that he originated. (ECF No. 23-1, ¶ 20(a).) He would also receive a branch override bonus of 22 basis points for each closed and funded loan that originated from the Portland branch, except with respect to loans originated by Plaintiff Gosselin through April 30, 2019, for which he would receive 12.5 basis points. (ECF No. 23-1, ¶ 20(b).) While both Village and Plaintiff Barton agree that he never signed the revised agreement (ECF No. 23-1, ¶ 21; ECF No. 23-2, ¶ 15; ECF No. 24-1, ¶ 7), Village contends that Plaintiff agreed that beginning January 23, 2019, his compensation would be based upon its terms. (ECF No. 23-1, ¶ 20.) Plaintiff Barton contends he did not so agree. (ECF No. 24-1. ¶ 7.) [6]

Village paid Plaintiff Barton pursuant to the terms of the revised agreement for payrolls issued between February 20, 2019 and April 5, 2019. (ECF No. 23-1, ¶¶ 14-15.) Plaintiff Barton's last paycheck was issued April 19, 2019. (ECF No. 23-2, ¶ 16.) Village

---

[5] As with Plaintiff Gosselin's offer of employment terms, Plaintiff Barton was obligated to repay the sign-on bonus if he left the company or was terminated within 12 months of his start date. Plaintiff Barton's period of employment with Village extended beyond 12 months.

[6] In an email submitted by Village from Plaintiff Barton to Tracy Schweiger dated February 16, 2019, Plaintiff Barton stated that his attorney "suggest[s] that until the new agreements are executed, I should continue to be paid in accordance with the terms of the offer letter dated December 27, 2017." (ECF No 23-2, #156.)

calculated Plaintiff Barton's final paycheck based on the terms of his original employment and compensation agreements. (*Id*.)

Plaintiff Barton contends that he is owed $24,923.01 in branch override bonuses (ECF No. 18-7, ¶ 8a-b), and a commission of $2,740.31 on loans he originated (ECF No. 18-7, ¶ 9). He also claims he is owed "Premier Lending" bonuses of $3,332.27. (ECF No. 18-7, ¶ 10a-b.) The parties disagree about the time frame in which Plaintiff Barton began to earn a commission on Premier Lending loans. Village alleges that the bonus of 10 basis points for closed and funded loans that originated as Premier Lending loans with SIS Bank was part of the revised agreement the parties negotiated in January 2019. (ECF No. 23-1, ¶ 20(c).) Plaintiff Barton maintains that Village paid him Premier Lending bonuses prior to that date. (ECF No. 24-1, ¶¶ 3, & 6.)[7]

Village agrees that Plaintiff Barton earned, but was not paid, commissions and a branch override bonus on two loans he personally originated, which loans had a total value of $738,750. (ECF No. 23-2, ¶ 17.) The record also demonstrates that Plaintiff Barton earned, but was not paid, a branch override bonus on 13 loans he originated that closed between April 1, 2019 and June 3, 2019; the total amount of the loans was $4,051,077. (ECF No. 23-2, ¶ 18.) Two of the loans, of unspecified amount, were allegedly Premier Lending loans through SIS Bank. (*Id*.) Village does not explicitly dispute that Plaintiff Barton is owed a Premier Lending bonus on the two loans.

---

[7] In his February 16, 2019 email to Tracy Schweiger, Plaintiff Barton referenced his understanding that "the Premier Lending payout structure [was] in process." (ECF No. 23-2, #156.)

Because the parties evidently agree that Plaintiff Barton's compensation should be based on his original compensation agreement, and because the record demonstrates that Village did not pay Plaintiff commissions and bonuses on a number of loans, Plaintiff Barton has established that he is more likely than not to succeed on his claim against Village under section 626 and, therefore, is entitled to an attachment and an attachment on trustee process as follows: with respect to the $738,750 in loans he originated, commissions in the amount of $4,432.50 (60 basis points) and branch override bonuses of $2,216.25 (30 basis points); and with respect to the $4,051,077 in loans originated by Plaintiff Gosselin, override bonuses of $12,153.23 (30 basis points).[8] The total amount of unpaid commissions and bonuses due to Barton is at least $18,801.98; when multiplied by three, the sum of the attachment and attachment on trustee process to which Barton is entitled is $56,405.94.

## CONCLUSION

Based on the foregoing analysis, the Court grants in part Plaintiffs' Motion for Approval of Attachment and Attachment on Trustee Process. The Court orders Plaintiff McNally shall have an attachment and attachment on trustee process on Defendant's property in the amount of $17,700; the Court orders Plaintiff Gosselin shall have an attachment and attachment on trustee process on Defendant's property in the amount of $89,049.57; and the Court orders Plaintiff Barton shall have an attachment and attachment on trustee process on Defendant's property in the amount of $56,405.94. The aggregate

---

[8] Because the record regarding the two Premier Lending loans is somewhat uncertain, Plaintiff Barton has not been established by a preponderance of the evidence the amount, if any, of the attachment to which he is entitled.

amount of the attachment and attachment on trustee process authorized against Defendant's property is $163,155.51.

## **NOTICE**

Any objections to this Order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 31st day of October, 2019.